UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DARLENE BENWARE BECHLER

        Plaintiff,

      v.                           **REPORT AND RECOMMENDATION**
                                              **07-CV-0380 (LEK)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff Darlene Benware Bechler brings this action pursuant to the Social

Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final

decision of the Commissioner of Social Security ("Commissioner"), denying her

application for Disability Insurance Benefits ("DIB").[1] Specifically, Plaintiff alleges that

the decision of the Administrative Law Judge ("ALJ") was not supported by substantial

evidence and contrary to the applicable legal standards. The Commissioner argues that

the decision was supported by substantial evidence and made in accordance with the

correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision

contains legal error and is not supported by substantial evidence. Therefore, the Court

recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part

and Defendant's Cross-Motion for Judgment on the Pleadings be denied.[2]

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman
A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated August 14, 2009.
[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such
filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as

## II.    Background

Plaintiff applied for DIB on June 29, 2004, alleging an onset date of March 22, 2004 (R. at 29, 101).[3] Plaintiff alleges disability due to back, neck, arm, shoulder, and knee impairments as well as myofascial pain syndrome ("MPS")[4] and fibromyalgia.[5] Her application was denied initially on November 18, 2004 (R. at 30-32). Plaintiff filed a request for a hearing on December 2, 2004 (R. at 37).

On June 15, 2005, Plaintiff appeared before the ALJ (R. at 297). The ALJ considered the case *de novo* and, on July 8, 2005, issued a decision finding Plaintiff not disabled (R. at 49-56). Plaintiff requested review by the Appeals Council on September 12, 2005 (R. at 59). The Appeals Council issued a decision remanding the case to the ALJ on November 10, 2005 (R. at 61-63). A subsequent hearing was held on September 16, 2006 (R. at 314). On December 26, 2006, the ALJ issued a second decision again finding Plaintiff not disabled (R. at 11-25). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on February 9, 2007. (R. at 4-7). On April 10, 2007, Plaintiff filed this action.

Based on the entire record, the Court recommends remand because the ALJ erred in applying the treating physician rule.

---

if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

[3] Citations to the underlying administrative record are designated as "R."

[4] "Myofascial pain syndrome is a chronic form of muscle pain. The pain of myofascial pain syndrome centers around sensitive points in your muscles called trigger points. The trigger points in your muscles can be painful when touched. And the pain can spread throughout the affected muscle." Mayo Clinic, *Myofascial Pain Syndrome*, *available at* http://www.mayoclinic.com/health/myofascial-pain-syndrome/DS01042/METHOD=print (last visited September 30, 2009).

[5] "[P]ain and stiffness in the muscles and joints that either is diffuse or has multiple trigger points." *Dorland's Illustrated Medical Dictionary*, 711 (31st ed. 2007).

### III.    Discussion

### A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must

be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[6] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this

---

[6] This five-step analysis is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

   **B.     Analysis**

      **1.  The Commissioner's Decision**

   In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the insured status requirements of the Act through December 31, 2010 (R. at 13); (2) Plaintiff has not engaged in substantial gainful activity since her alleged onset date, March 22, 2004 (R. at 13); (3) Plaintiff's torn meniscus of the left knee and degenerative disc disease of the cervical and lumbar spines constituted a severe combination of impairments (R. at 13); (4) Plaintiff's impairments do not either singly or in combination meet or equal a listed impairments in 20 C.F.R. Part 404, Supbart P, Appendix I (R. at 14); (5) Plaintiff retained

> the residual functional capacity to perform light work activity, which
> involves no crawling or climbing of ladders, ropes and scaffolds and
> occasional stooping, crouching and climbing of stairs. This work activity
> would also limit the claimant to pushing or pulling 20 pounds occasionally
> with her lower extremities and the performance of occasional repetitive
> activities and occasional overhead work with her upper extremities, with a
> limit of lifting 5 pounds

(R. at 14); (6) Plaintiff's allegations of pain were not entirely credible (R. at 18); (7) Plaintiff was unable to perform any of her past relevant work (R. at 23); (8) Plaintiff had

transferable work skills from her past relevant work (R. at 23); (9) According to the testimony of a vocational expert ("VE"), Plaintiff had the ability to perform work in the national economy in significant numbers, including information clerk, telephone solicitor, and order clerk (R. at 24). Ultimately, the ALJ found that Plaintiff was not under a disability at any time from her alleged onset date, March 22, 2004, through the date of his decision (R. at 25).

### 2. Plaintiff's Claims:

Plaintiff argues that the Commissioner's final decision is not supported by substantial evidence and contrary to the legal standards. Specifically, Plaintiff argues that a) the ALJ erred in failing to grant Dr. Welch's opinions controlling weight; b) the ALJ's credibility analysis was flawed; c) the ALJ erred in granting any weight to Dr. Abeles; and d) the ALJ erred in finding Plaintiff could perform light work.

### a) The ALJ Erred in Applying the Treating Physician Rule

Plaintiff argues that the ALJ erred in failing to grant Plaintiff's treating physician, Dr. Welch, controlling weight. Plaintiff's Brief, pp. 5-8.

Dr. Welch began treating Plaintiff on October 22, 2004, and continued treating her through August 22, 2006 (R. at 206-09, 287-88). Dr. Welch originally diagnosed Plaintiff with a strain and sprain to the neck and shoulder area with a myofascial pain syndrome; a strain and sprain of the low back with a sacroiliac joint dysfunction; chronic low back pain; and chronic neck and shoulder pain (R. at 206). Dr. Welch's diagnosis of MPS continued throughout his treatment with Plaintiff (R. at 287). On April 19, 2006, Dr. Welch also diagnosed Plaintiff with fibromyalgia (R. at 277). The ALJ failed to find that either Plaintiff's diagnosis of MPS or fibromyalgia to be severe impairments (R. at 13).

6

The ALJ granted "little weight to the opinions and limitations established by Dr. Welch" (R. at 21). The ALJ engaged in a lengthy discussion of Dr. Welch's findings and opinions. Ultimately, the ALJ based his decision to grant Dr. Welch's opinions little weight because they were based on Plaintiff's subjective complaints and his opinions were not supported by objective medical evidence (R. at 21-23). The Court finds that the ALJ's analysis was flawed.

The Second Circuit has held that a treating source's opinions may not be discounted simply because they are based on a claimant's subjective complaints. Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) ("[A] patient's report of complaints, or history, is an essential diagnostic tool."). Thus, it was error for the ALJ to discount Dr. Welch's opinions because he was relying, *in part*, on Plaintiff's subjective complaints. See McCarty v. Astrue, 2008 WL 3884357, at *6 (Aug. 18, 2008 N.D.N.Y.) (finding that "reliance on Plaintiff's subjective complaints is not a valid basis for rejecting [the treating physician's] opinion.").

The ALJ acknowledged several of Dr. Welch's opinions. For example, the ALJ noted Dr. Welch's finding that Plaintiff was "restrict[ed] in the use of her right upper extremity for pushing, pulling, lifting, carrying, and reaching, she could handle light objects in the five to ten pound range, as long as it was not done in a highly repetitive fashion" (R. at 21). The ALJ also noted Dr. Welch's opinion that Plaintiff "would be able to handle a sedentary job, which enabled her to switch positions," and that "she might be able to return to work that would not involving any bending or the lifting of more than 10 to 15 pounds" (R. at 22). The ALJ repeatedly found that these opinions were not supported by Dr. Welch's objective medical findings (R. at 22-23).

Dr. Welch diagnosed Plaintiff with MPS and fibromyalgia (R. at 287). Dr. Welch's diagnoses were supported by other physicians in the record. For example, Dr. Yovanoff, a rheumatologist, examined Plaintiff for a disability evaluation[7] on January 10, 2006 (R. at 264-67). Dr. Yovanoff found "tenderness to palpation of most muscle groups in the neck, shoulders, arms, and legs" (R. at 265). Dr. Yovanoff diagnosed Plaintiff with a "chronic pain syndrome" (R. at 267). Dr. Abeles, a non-examining review physician, also diagnosed Plaintiff with a "chronic pain syndrome with myofascitis"[8] (R. at 254). Dr. Baird, an orthopedist, examined Plaintiff on July 12, 2004 (R. at 169). Dr. Baird noted that she had a herniated nucleus pulpus at the L5-S1 level, but did not believe it was causing her symptoms (R. at 169). Thus, Dr. Baird diagnosed Plaintiff with a "myofascial pain picture" and recommended Plaintiff be seen a pain care specialist because surgery would be of no help. Id. Dr. Welch was that pain specialist (R. at 226).

The ALJ discounted Dr. Welch's opinions because he did not find that they were supported by clinical and diagnostic techniques. For example, the ALJ noted Dr. Welch's findings that Plaintiff "exhibited no signs of any neurological deficits. Her reflexes were normal, sensation was normal, and motor strength was symmetrical with good grading" (R. at 22).  However, "[i]n stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." Preston v. Sec'y of Health & Human Servs., 854 F.2d 815, 817-18 (6th Cir. 1988).The Seventh Circuit has described fibromyalgia as follows:

---

[7] It appears that the examination occurred for Plaintiff's Worker's Compensation claim.
[8] "[I]nflammation of a muscle and its fascia, particularly of the fasical insertion of muscle to bone." Dorland's at 1241.

> [F]ibromyalgia, also known as fibrositis [is] a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

Sarchet v. Chater, 78 F.3d 305, 305-06 (7th Cir. 1996) (internal citations omitted). The

Second Circuit has also "recognized that fibromyalgia is a disabling impairment and that

there are no objective tests which can conclusively confirm the disease." Green-

Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003) (quoting Preston v. Sec. of Health

& Human Servs., 854 F.2d 815, 818 (6th Cir. 1988)). Thus, the absence of clinical or

diagnostic techniques does not diminish a diagnosis of fibromyalgia. Notably, Dr. Welch

continually found tenderness and trigger points associated with MPS and fibromyalgia

(R. at 200, 207, 231, 233, 287).

Therefore, it was error for the ALJ to dismiss Dr. Welch's opinions based on an

apparent lack of supporting clinical and diagnostic techniques. Based on the foregoing,

the Court recommends remand to allow the ALJ an opportunity to re-evaluate the

weight to afford to Dr. Welch's opinions.

### b)  The ALJ's Credibility Analysis is Necessarily Flawed

Plaintiff argues that the ALJ erred in analyzing her credibility. Plaintiff's Brief, pp.

10-11.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it

is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[9] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

---

[9] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

Here, the ALJ completed the two-step process by "find[ing] that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (R. at 18). The ALJ also discussed several of the factors in his decision. For example, the ALJ noted Plaintiff's statements, concerning her daily living activities, that she "was able to knit, crochet, watch television and perform light housework. She was able to utilize a treadmill for exercise" (R. at 16). The ALJ also considered the efficacy of Plaintiff's medications. For example, the ALJ noted in March 2006 that Plaintiff's pain was "under reasonably good control with her current medications" (R. at 16). The ALJ found that "medication had improved her pain." Id. Finally, the ALJ stated that Plaintiff's "methods of treatment, thus far, have primarily consisted of oral medications and physical therapy" (R. at 18).

However, as previously stated, the ALJ improperly discounted Dr. Welch's opinions. Supra Part III.B.2.a. The proper evaluation of Dr. Welch's opinions will most likely impact Plaintiff's credibility. Therefore, despite properly following the process for determining credibility required by the regulations, the analysis is necessarily flawed.

Based on the foregoing, the Court finds that the ALJ's credibility analysis was not supported by substantial evidence.

### c) The ALJ Must Necessarily Re-Evaluate the Weight to Afford Dr. Abeles' Opinions

Plaintiff argues that the ALJ erred in affording Dr. Abeles' opinions any weight because it is unclear from the record what exhibits Dr. Abeles reviewed.  Moreover, Dr.

11

Abeles did not support his opinions with reference to the relevant records in Plaintiff's case.[10] Plaintiff's Brief, pp. 11-12.

On May 30, 2006, the ALJ wrote a letter to independent review orthopedic physician, Dr. Abeles, to request his medical opinion regarding Plaintiff's functional abilities (R. at 245). Dr. Abeles responded to the ALJ's request on June 12, 2006 (R. at 257, 261). By affording Dr. Abeles' opinion "some weight," the ALJ granted more weight to Dr. Abeles' opinion than to Dr. Welch, Plaintiff's treating physician (R. at 20).

In his letter to Dr. Abeles, the ALJ stated that "[e]nclosed are exhibits selected for inclusion in the record of this case and a list of this evidence for your reference." Id. However, the letter does not indicate which exhibits were selected for Dr. Abeles' review. It is therefore unclear whether Dr. Abeles had access to all Plaintiff's medical records, or a selected few. Thus, on remand, if the ALJ continues to rely on Dr. Abeles' opinions, he must reveal whether Dr. Abeles reviewed all Plaintiff's medical records. See Hidalgo v. Bowen, 822 F.2d 294, 298 (2d Cir. 1987) (the testimony of a review physician, who did not have access to Plaintiff's complete medical records, did not constitute substantial evidence to override the diagnoses of Plaintiff's treating physicians).

Moreover, Dr. Abeles failed to offer any evidence to support his opinions. After Dr. Abeles completed a functional assessment of Plaintiff's limitations, he was asked

---

[10] Plaintiff also argues that Dr. Abeles opinions should be disregarded because Dr. Abeles was under review by the New York State Board for Professional Medical Conduct. Plaintiff's Brief, p. 12. Defendant also acknowledges this event. Defendant's Brief, p. 18, n. 11. However, The Court could not locate any evidence of these events in the record. According to both Plaintiff and Defendant, Dr. Abeles' medical license was neither revoked nor suspended. Id.; Plaintiff's Brief, p. 12. Thus, the ALJ did not err in failing to dismiss Dr. Abeles' opinions on these grounds. See 20 C.F.R. § 404.1503a ("We will not use in our program any individual . . . whose license to provide health care services is currently revoked or suspended by any State licensing authority . . . .").

"[w]hat medical/clinical finding(s) support your conclusions" (R. at 259). Dr. Abeles responded with "review of the chart." Id. Dr. Abeles offered no other explanation for his findings.[11] In weighing the opinion of a non-examining review physician, the ALJ is instructed to consider "supporting explanations provided by the physician." 20 C.F.R. § 416.927(f)(2)(ii). The ALJ did not acknowledge Dr. Abeles' failure to offer a supporting explanation.

In re-evaluating the opinions from Plaintiff's treating physician, Dr. Welch, the ALJ must necessarily re-weigh Dr. Abele's opinions. Thus, on remand, the ALJ must reveal whether Dr. Abeles reviewed the entire record in forming his opinions and determine whether he sufficiently supported his opinions.

### d) The Court Cannot Determine Whether ALJ's Finding that Plaintiff Could Perform Light Work Is Supported by Substantial Evidence

Plaintiff argues that the ALJ's finding that Plaintiff was capable of light work is not supported by substantial evidence. Plaintiff's Brief, pp. 8-10.

Because the ALJ erred in evaluating the opinions from Plaintiff's treating physician, Dr. Welch, the Court cannot reach whether the ALJ's finding at step four of the sequential evaluation was supported by substantial evidence.

## IV.   Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in

---

[11] Dr. Abeles opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry 10 pounds, had no limitation to standing and/or walking, had no limitation to sitting, and was limited to pushing and/or pulling in her lower extremities up to twenty pounds (R. at 259).

accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:        Syracuse, New York
              November 30, 2009

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v.*

*Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v.*

*Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for

the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


            Syracuse, New York
DATED:       November 30, 2009